**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

LEZQUAN BATTS, et al.,

          Plaintiff,

          v.

RUTGERS UCHC, et al.,

          Defendants.

Civil Action No. 25-14106 (KMW) (EAP)

**OPINION**

**WILLIAMS, District Judge:**

This matter comes before the Court on the Court's *sua sponte* screening of Plaintiffs' complaint (ECF No. 1) and the Court's review of Plaintiffs' applications to proceed *in forma pauperis* (ECF Nos. 8, 11-18). Having reviewed the applications, this Court finds that leave to proceed *in forma pauperis* is warranted in this matter for Plaintiffs Batts, Williams, Pettolina, Tapia-Lobos, Ruiz, Silva, and Jones, and their applications are therefore granted. As none of the remaining Plaintiffs sought to proceed with this matter, they shall all be dismissed without prejudice pursuant to this Court's prior order. (*See* ECF No. 3.) Because several Plaintiffs shall be granted *in forma pauperis* status in this matter, this Court is required to screen their complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismiss any claim which is frivolous, malicious, fails to state a claim for relief, or seeks relief from an immune defendant. For the reasons set forth below, Plaintiff Batts's excessive force claim shall proceed as to Defendants Walters and Browne only, and all other claims and parties shall be dismissed from this matter without prejudice.

## I.    BACKGROUND

Plaintiffs in this matter are a number of inmates detained in South Woods State Prison. (ECF No. 1 at 3-4.)  In July 2025, the ventilation system in their prison unit failed, resulting in the loss of air conditioning and a lack of air flow through their unit, resulting in temperatures of up to 100 degrees during July.  (*Id.* at 8, 11.)  Because of this high heat, inmates' ability to engage in recreation and exercise was limited during the month of July 2025.  (*Id.* at 11.)  Plaintiffs also allege that they were exposed to "fumes" of some kind, without elaboration. (*Id.* at 12.)  Plaintiffs contend that this outage amounts to unlawful conditions of confinement in light of the heat and lowered air quality they experienced.  (*Id.* at 11-12.)  Plaintiffs also allege they went for as long as "89 hours" without shower during this time.  (*Id.* at 12.)

Plaintiffs also contend that they have received inadequate medical care.  Plaintiff Batts contends that unspecified persons interfered with Batts's skin medication, and that a Jane Doe nurse and John Doe officer provided Batts with an injection through a cell door rather than in a private room, allegedly also violating Batts's right to privacy.  (*Id.* at 8-10.)  Batts also alleges that grievances have been routinely ignored or denied.  (*Id.* at 45.)  Plaintiff Jones contends that he placed a sick call for a nerve damage issue and unspecified medical officials failed to fully respond to his request or refer him to a specialist.  (*Id.* at 9.)  Plaintiff Silva also alleges that he had leg wounds from poor circulation which he had difficulty keeping clean, though he does not allege any specific individual was made aware of or failed to respond to this issue.  (*Id.* at 18.)

Plaintiffs also allege that their religious rights under the Religious Land Use and Incarcerated Persons Act, "RLUIPA," have been violated by limited religious services in their unit. (*Id.* at 31-32.)  Although Plaintiffs assert that some unspecified number of them are Christian, Muslim, or belong to other faiths, they do not allege facts as to their own specific sincerely held

beliefs, nor how their own specific rights have been obstructed, and instead merely provide a blanket allegation that religious services are limited without elaboration. (*Id.*)

Plaintiffs also allege that Batts suffered an incident of excessive force on or about July 13, 2025. (ECF No. 1 at 42; ECF No. 1-3 at 5.) According to the complaint, a different inmate flooded his cell, which flooded into Batts's cell. (*Id.* at 5-6.) Batts apparently complained (the complaint is unclear on what occurred between the flooding and the force incident) and placed arms through the food port of the cell. Defendant Officer Walters "smash[ed]" Batts's arms, trying to force them back into the cell, and Defendant Officer Browne sprayed Batts with pepper spray in an attempt to aid Walters. (*Id.*at 6.) Batts was then cuffed and removed from the cell, briefly placed in a shower to wash off the spray, and placed in punitive detention. (*Id.*) Batts was apparently charged and found guilty of violating a prison disciplinary rule as a result of this incident. (*Id.* at 14.)

Plaintiffs also seek to raise claims under HIPPA, the Prison Rape Elimination Act, and a number of state statutes including the New Jersey Law Against Discrimination, and the Isolated Confinement Restriction Act. (*Id.* at 32-42.) In raising these claims, however, Plaintiffs engage in group pleading – both as to Defendants, who are pled as an amorphous uniform entity responsible for all wrongs, and as to Plaintiffs themselves who don't differentiate between themselves as to which claims apply, and who suffered which specific wrong other than those discussed above. (*Id.*) Finally, Plaintiffs seek to raise an equal protection claim, asserting that they, inmates in restricted custody, are treated differently than those in general population in the prison. (*Id.* at 51-54.) Plaintiffs do not, however, explain how they are similarly situated to these other inmates – who they admit are at a different custody level in the prison – nor do they identify a specific protected class which applies to them, instead relying on an assumption that one or another class may apply to various members of the Plaintiff group. (*Id.*)

## II.    <u>LEGAL STANDARD</u>

Because Plaintiff shall be granted *in forma pauperis* status, this Court is required to screen his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  Pursuant to the statute, this Court must *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *Id.*  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  A complaint that provides facts

"merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While *pro se* pleadings are to be liberally construed in conducting such an analysis, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III.  **DISCUSSION**

In their complaint, Plaintiffs raise a number of civil rights claims pursuant to 42 U.S.C. § 1983 and its state law analogue, the New Jersey Civil Rights Act. Because the same standards and defenses apply to both equally, this Court will discuss the two together. *See, e.g., Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). Preliminarily, this Court notes that it observes no basis to dismiss Plaintiff Batts's excessive force claims against Defendants Walters and Browne, and that claim shall therefore be permitted to proceed against those two Defendants, the only two Plaintiff actively identifies as involved in the use of force, at this time.

Aside from this excessive force claim, Plaintiff's various claims all suffer from similar issues. First, Plaintiffs engage in group pleading – referring to Defendants as a single bloc and not differentiating which are involved in which specific issues and how each Defendant violated their rights. This is improper. *See Cheng v. Byrd*, No. 24-5345, 2024 WL 3873945, at *2 (D.N.J. Aug. 20, 2024) (civil rights plaintiff cannot state a claim for relief based on personal involvement by alleging defendants' responsibility on a group basis without specifying the individual actions of the defendants). Likewise, to state a claim for a civil rights violation, a plaintiff must generally specify how each Defendant was personally involved in the alleged wrongs – a defendant may not be held liable merely as a supervisor, or based on the actions of his underlings. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-

08 (3d Cir. 1988). Supervisory officials may therefore only be held liable where they can be said to be personally involved in the alleged wrong -- either where they were directly involved, had knowledge of and acquiesced in the alleged wrong, or put into place a policy, custom, or practice which was the moving force behind the alleged violation. *Chavarriaga*, 806 F.3d at 222; *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). Plaintiffs provide only conclusory allegations of knowledge, acquiescence, or policy issues in their complaints. The lack of specific allegations as to which Defendants were involved in any given issue requires the dismissal of the medical claims of Jones and Silva, as well as Plaintiffs' conditions of confinement claims, as well as Plaintiff's state law ICRA and NJLAD claims.

Plaintiffs' conditions of confinement claims also fail to state a plausible claim for relief because they are based on short term, temporary issues which are largely the result of a mechanical failure. To plead an Eighth Amendment claim based on unduly punitive conditions of confinement, a plaintiff must plead facts indicating that the defendants subjected him to "objectively, sufficiently serious" conditions which resulted in the "denial of the minimal civilized measure of life's necessities," and that the prison officials' actions indicate that he was "deliberate[ly] indifferen[t] to [the plaintiff's] health or safety" in imposing those conditions. *See Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). Therefore, although the Eighth Amendment prohibits the imposition of inhumane conditions on prison inmates, it "does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Here, Plaintiffs largely contend that they were subjected to a lack of air conditioning and the resulting heat, discomfort, and malaise that come from spending summer days in a cramped prison unit as a result of a failure in the prison's ventilation system. They also allege that this mechanical failure caused smells and other issues related to poor air flow, as well as limited shower opportunities, but that this began shortly before their complaint was filed. Given the relatively

short time period at issue here – the approximately two weeks between the failure of the system and the filing of the complaint and the fact that the conditions discussed are uncomfortable certainly but not so severe as to deprive Plaintiffs of the minimal measure of life's necessities, Plaintiffs' conditions claim as pled fails to set forth a sufficiently serious condition to support a plausible claim for relief. Plaintiffs' conditions of confinement claim must therefore be dismissed without prejudice in its entirety.

Plaintiffs' medical claims are also deficient. To plead a medical claim under the Eighth Amendment, a plaintiff must plead facts which would show that he had a sufficiently serious medical need, and that the defendant engaged in actions or omissions which indicate that he knew of and disregarded "an excessive risk to inmate health or safety" presented by that need. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). As noted above, only Plaintiff Batts actually identifies any actual individuals involved in the denial of medical care – a fictitiously pled nurse and officer. As the remaining Plaintiffs do not identify any particular Defendant involved in their medical issues, those claims must be dismissed without prejudice. Plaintiff Batts's medical claim must also be dismissed because ethe only issue for which Batts identifies Defendants is the giving of a shot of prescribed medication through a cell door. While this may not be ideal, the provision of the required medicine cannot be said to be deliberately indifferent to Batts's needs. All Plaintiffs' medical claims are therefore dismissed without prejudice for failure to state a plausible claim for relief at this time.

Plaintiffs also seek to raise a claim under RLUIPA. In order to plead a RLUIPA claim, however, a plaintiff must at a minimum identify what sincere religious beliefs he holds, what those tenets require, and how the defendants are interfering with his meeting of those requirements. *See, e.g., Holt v. Hobbs*, 574 U.S. 352, 356-57 (2015). Here, Plaintiffs only identify that *some* of their number belong to various religious sects, and do not delineate their specific beliefs, the

requirements of those beliefs, or how they are being prevented from meeting those requirements by Defendants. Plaintiffs thus fail to state a plausible claim for relief under RLUIPA.

Plaintiffs next contend that they have been denied their right to petition the Government insomuch as they believe they have received inadequate responses to their grievances. However, Prisoners have no constitutional right to an inmate grievance system, nor do they have a right to a response where the state chooses to create such a system. *See, e.g., Roberts v. Aviles*, No. 10-5916, 2012 WL 603790, at *1 n. 4 (D.N.J. Feb. 16, 2012); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa.), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state"). Thus, that the state inadequately responds to grievances does not state a plausible claim for relief.

Plaintiffs next attempt to repackage the claims of Batts related to receiving estrogen shots through a cell door into a claim for a violation of the right to privacy, a violation of HIPPA, or a PREA violation. Neither state or federal HIPPA statutes nor PREA, however, provide a private cause of action for individual plaintiffs. *See Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017); *Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); *see also Wade v. Mills*, No. 19-21501, 2021 WL 689106, at *3 (D.N.J. Feb. 23, 2021); *Welch v. Cape May Cnty. Corr. Ctr.*, No. 15-8745, 2016 WL 686255, at *2 (D.N.J. Feb. 19, 2016).

Plaintiffs' medical privacy claim could therefore only be brought under the general right to the privacy of one's medical information. *See, e.g., Archie v. Warren*, No., 2022 WL 92804, at *2 (D.N.J. Jan. 10, 2022). Given the limited privacy accorded to prisoners, courts in this circuit have only permitted medical privacy claims related to prisoners to proceed where they allege that the defendants disclosed "an unusual medical condition which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm,

particularly when word of the condition is likely to spread through 'rumor or gossip.'" *Id. (quoting Smith v. Hayman*, No. 09-2602, 2012 WL 1079634 at *18 (D.N.J. Mar. 30, 2012)). Here, Plaintiff Batts asserts only that staff provided estrogen shots through a cell door, not that they otherwise announced or made known to all others the exact details of what was being provided. While Batts does allege that other inmates made snide remarks about Batts identifying as transgender, given Batts statement that Batts presents as such in general, the complaint does not support an inference that these other inmates knew of this condition merely because Batts received a shot through a cell door. The complaint as pled thus does not support the inference that the medical defendants revealed or otherwise improperly disclosed Batts condition to others by providing medicine through a cell door, and thus Plaintiffs fail to state a plausible claim for relief for a privacy violation.

Finally, Plaintiffs seek to raise an equal protection claim. Such a claim generally requires allegations that a plaintiff is either a member of a protected class who has been treated differently than others similarly situated because of membership in that class, or that the plaintiff was treated differently from others similarly situated without a rational basis for the difference in treatment. *See ." Watlington ex. rel. FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 139 (3d Cir. 2018); *Wofford v. Lanigan*, No. 14-5723, 2015 WL 9480016, at *5 (D.N.J. Dec. 28, 2015) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000)). Here, Plaintiffs suggest they receive different treatment from those in lower security custody in general population, whereas they are subject to harsher conditions as they are in a more secure custody unit for various reasons. These allegations thus fail to show that those being treated differently are similarly situated – they are at the very least at a different security level in the prison, which supports an inference of a rational difference sufficient to support different treatment – and likewise fail to identify the

specific protected classes that may apply to them. Thus, Plaintiffs fail to plead a plausible claim for relief under the equal protection clause at this time.

Having reviewed the entirety of the complaint, Plaintiff Batts's excessive force claim shall proceed at this time against Defendants Walters and Browne. For all other claims, plaintiffs, and defendants are dismissed without prejudice. The Court notes, however, that at least some of the claims, Plaintiffs, and Defendants in this matter may have been improperly joined. Under the federal rules, multiple plaintiffs or defendants may only be joined in a single case where there is a right to relief which can be asserted by or against all of them arising out of a single transaction, occurrence, or series of occurrences, and there are questions of law or fact common to all plaintiffs or defendants in the case. *See* Fed. R. Civ. P. 20(a). The rules do not permit a kitchen sink approach in which a plaintiff or group of plaintiffs raise numerous unrelated claims merely because they all involve the plaintiff or groups of plaintiffs. Thus, should any attempt be made to amend this matter, Plaintiffs should be mindful that the requirements of the Federal Rules as to joinder of claims and parties do apply to them and any unrelated claim attempted to be added to this matter may be dismissed or severed for improper joinder.

Finally, the Court notes that Plaintiff Batts has also filed both a motion to reopen this matter and a motion seeking appointed counsel. Because this matter shall be reopened, the motion to reopen is granted. Plaintiff's motion seeking appointed counsel, however, is denied without prejudice as the sole remaining claim in this matter is not complex, will likely require little discovery, and Plaintiff Batts has ably demonstrated an ability to present this claim. *See Cuevas v. United States*, 422 F. App'x 142, 144-45 (3d Cir. 2011); *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).

10

## IV.    <u>CONCLUSION</u>

For the reasons expressed above, Plaintiffs Batts, Williams, Pettolina, Tapia-Lobos, Ruiz, Silva, and Jones *in forma pauperis* applications (ECF Nos.8, 11-18) are **GRANTED**; Plaintiff Batts's excessive force claims shall **PROCEED** at this time against Defendants Brown and Walters, and all remaining claims and parties shall be **DISMISSED WITHOUT PREJUDICE**. Plaintiff Batts's motion to reopen (ECF No. 10) shall be **GRANTED**; and Plaintiffs' motion seeking appointed counsel (ECF No. 7) shall be **DENIED WITHOUT PREJUDICE**.  An order consistent with this Opinion will be entered.

Dated:  November 3, 2025

Hon. Karen M. Williams,
United States District Judge